## FIRST NAT. BANK IN EUREKA, KAN., v. FIRST NAT. BANK OF EUREKA, KAN., et al.

(District Court, D. Kansas, Second Division. June 26, 1926.)

No. 376.

Banks and banking ⬅250(6)—In suit to enforce liability of stockholders of national bank, defendants may be assessed to the full extent of their liability, leaving them to enforce contribution from others not parties (Federal Reserve Act, § 23 [Comp. St. § 9689]).

Under Federal Reserve Act, § 23 (Comp. St. § 9689), providing, without qualification, that stockholders of a national bank shall be held individually responsible for all contracts, debts, and engagements of the association to the extent of the par value of their stock in addition to the amount invested in such stock, in a suit to enforce such liability, the stockholders before the court may be assessed to the full extent of their liability if necessary to pay the indebtedness of the bank leaving them to enforce contribution from nonresident stockholders who could not be brought in.

In Equity. Suit by the First National Bank in Eureka, Kan., against the First National Bank of Eureka, Kan., and others. On exceptions to report of special master. Exceptions sustained, and decree for complainant.

14 F.(2d)—9

H. G. Leedy and M. W. Rider, both of Kansas City, Mo., for plaintiff.

Wicker & Badger, of Eureka, Kan., for defendant Badger.

Harris & Samuel, of Emporia, Kan., for defendant Morris.

Yankey, Holmes, Eaton & Gleason, of Wichita, Kan., for defendant Nye.

POLLOCK, District Judge. The facts are the defendant First National Bank of Eureka, being insolvent, went into voluntary liquidation, and was liquidated by the plaintiff bank under a contract by which all the property, assets, and rights of the defendant bank were turned over to plaintiff. There now remains due to plaintiff, under the terms of this liquidation contract the sum of $53,716, with interest from March 22, this present year, at the rate of 6 per cent.

This suit is in the nature of a creditors' bill, brought to assess the stockholders defendant with their liability to pay the debt of plaintiff. As some of the shareholders are not within the jurisdiction of this court, and hence are not before the court for assessment, the question has arisen, What is the extent of a shareholder's liability to creditors in a national banking institution under existing law?

The special master, to whom the case was referred after an examination of the question, held the stockholders could only be assessed equally and ratably, and therefore recommends only an assessment against the holders of shares before the court of 77.35 per cent. par value of their shares. As such assessment will raise but $39,835.92, leaving a part of the debt to plaintiff unpaid, the plaintiff by its exceptions contends it has the right in this suit to assess the shareholders before the court with 100 per cent. of the par value of the shares of the owners of stock before the court, leaving the right to defendants to resort to the liability of those shareholders not before the court to enforce contribution from them.

Of necessity, the right of plaintiff, a creditor, attempted to be here enforced, is a right created by statutory law. The original act creating this right was the Act of 1864 (R. S. § 5151), which reads, as follows:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares; except that share-

holders of any banking association now existing under state laws, having not less than five millions of dollars of capital actually paid in, and a surplus of twenty per centum on hand, both to be determined by the Comptroller of the Currency, shall be liable only to the amount invested in their shares; and such surplus of twenty per centum shall be kept undiminished, and be in addition to the surplus provided for in this title; and if at any time there is a deficiency in such surplus of twenty per centum, such association shall not pay any dividends to its shareholders until the deficiency is made good; and in case of such deficiency, the Comptroller of the Currency may compel the association to close its business and wind up its affairs under the provisions of chapter four of this title."

This act was amended by Act of June 30, 1876, to read as follows:

"*Enforcement of Shareholders' Individual Liability by Creditors on Voluntary Dissolution:* When any national banking association shall have gone into liquidation under the provisions of section five thousand two hundred and twenty of said statutes, the individual liability of the shareholders provided for by section fifty-one hundred and fifty-one of said statutes may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself and of all other creditors of the association, against the shareholders thereof, in any court of the United States having original jurisdiction in equity for the district in which such association may have been located or established." Section 2 (Comp. St. § 9807).

By the Federal Reserve Act of December 23, 1913, this act was made to read as follows:

"*Individual Liability of shareholders; Effect of Transfer of Shares*—The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be con-

strued to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure." Section 23 (Comp. St. § 9689).

The Federal Reserve Act further provides for repeal of inconsistent laws, as follows:

"All provisions of law inconsistent with or superseded by any of the provisions of this act are to that extent and to that extent only hereby repealed." Section 26 (Comp. St. § 9803).

The able special master, on a review of the subject, held section 5151, R. S., to have *not been repealed but to be still in force*, and that said section must be read in connection with the provision for the assessment of shareholders in national banks above quoted. Therefore the assessment made under the present Federal Reserve Act must be held to be only "equally and ratably, and not one for another."

While I find no adjudicated cases on the subject, and none have been furnished me, from a comparison of the above-quoted acts I cannot bring my mind to the conclusion reached by the special master. It may be, and doubtless, I think, is, true not all the provisions of section 5151, R. S., above quoted, as amended by Act June 30, 1876, were repealed by the Federal Reserve Act, for by that section as amended a method of enforcement of the liability of shareholders is prescribed, and that manner has been followed by plaintiff in this suit. But the subsequent act, now in force, specifically, positively, and directly changed the yardstick by which the liability was thereafter to be admeasured, leaving the manner of its application the same as under section 5151, R. S., as amended. This, I believe, to be the true construction of the acts. Had the Congress so determined, a manner of bringing all the shareholders in one jurisdiction before one court for the enforcement of the liability of all could well have been provided. It seems, however, this has not been done.

It follows, the exceptions of the plaintiff to the report of the special master in this respect must be sustained, and defendants before the court be assessed 100 per cent., as this amount is necessary to pay the plaintiff, as a creditor, under the liquidation contract. The exceptions of defendants J. J. Morris and Gordon A. Badger as to the manner in which the special master has found the costs of this litigation shall be paid are overruled and denied. I am of the opinion the costs should be assessed as recommended by the

special master, including a reasonable fee to the master, as agreed upon between the parties and the special master, or to be fixed by the court; the costs thus assessed to be presently paid by the plaintiff, but to be recovered off of defendants as costs of litigation. It is so ordered.